OPINION
{¶ 1} James Stewart appeals from the trial court's decision and entry overruling his motion to withdraw his pleas of no contest to charges of aggravated burglary and rape. In his sole assignment of error, Stewart contends the trial court abused its discretion when it overruled his motion.
 {¶ 2} The record reflects that the State indicted Stewart in December, 1989, on charges of aggravated burglary, rape, and felonious sexual penetration. On May 17, 1990, he filed a "no-contest petition." It contained an agreement that he would plead no contest to the aggravated burglary and rape charges in exchange for the State's dismissal of the felonious sexual penetration charge. The trial court held a change-of-plea hearing that same day and accepted Stewart's no-contest pleas. It then found him guilty and imposed a sentence of two concurrent terms of six to twenty-five years in prison.
 {¶ 3} In State v. Stewart (Mar. 20, 1992), Greene App. No. 90-CA-78, we affirmed Stewart's convictions on direct appeal, rejecting arguments concerning the trial court's failure to hold a competency hearing and its denial of a motion for a second mental evaluation. Nearly seven years later in State v. Stewart (Feb. 5, 1999), Greene App. No. 98-CA-116, we affirmed the trial court's denial of Stewart's pro se motion for declaratory judgment in which he sought to have his convictions declared void due to the State's failure to give an adequate statement of facts at the plea hearing.
 {¶ 4} Stewart subsequently filed a Crim.R. 32.1 motion to withdraw his no-contest pleas on December 12, 2002. In support, he argued, inter alia, that his trial counsel had provided ineffective assistance by making false promises to induce the pleas. He also argued that he was unaware of certain exculpatory evidence when he entered the pleas. For reasons that are not apparent, the trial court overruled Stewart's motion twice in nearly identical entries filed on December 19, 2002, and January 22, 2003. We granted him leave to file a delayed appeal on May 15, 2003.
 I. {¶ 5} On appeal, Stewart argues that withdrawal of his no-contest pleas was necessary to correct a manifest injustice. In particular, he contends his attorney induced him to plead no contest by falsely promising that he would be sentenced to concurrent terms of six to twenty-five years in prison but would be released on parole after serving four years and four months. He also argues that his attorney further induced him to enter the pleas by misinforming him that he could pick any one of the three charges against him to be dismissed in exchange for pleas of no contest to the other two. In reality, Stewart claims the State refused to dismiss the rape charge and insisted on dismissing one of the other two. Finally, Stewart argues that exculpatory evidence was withheld from him prior to the entry of his no-contest pleas and that he would have gone to trial if he had known about the evidence. In light of the foregoing allegations, which were supported by his affidavit, Stewart contends the trial court abused its discretion when it overruled his motion without conducting a hearing. For the reasons set forth below, we find Stewart's arguments to be unpersuasive. Accordingly, we will overrule his assignment of error and affirm the judgment of the Greene County Court of Common Pleas.
 II. {¶ 6} In order to prevail on a post-sentence motion to withdraw a plea, a movant must show a manifest injustice that needs to be corrected. Crim.R. 32.1; State v. Stumpf (1987), 32 Ohio St.3d 95, 104. The Ohio Supreme Court has defined a manifest injustice as a clear or openly unjust act. State ex rel. Schneider v. Kreiner (1998), 83 Ohio St.3d 203,208. This standard requires a showing of some extraordinary circumstances. State v. Smith (1977), 49 Ohio St.2d 261, 264. We note too that the good faith, credibility, and weight of a movant's assertions in support of a post-sentence motion to withdraw a plea are matters to be resolved by the trial court. Id.; see, also, Stumpf, supra, at 104. The decision whether to grant a motion to withdraw a plea is committed to the discretion of the trial court. Smith, supra, at 264. Moreover, an evidentiary hearing is not required on every post-sentence motion to withdraw a plea. The movant must establish a reasonable likelihood that withdrawal of his plea is necessary to correct a manifest injustice before a trial court must hold a hearing on his motion. State v.Humphrey, Montgomery App. No. 19243, 2002-Ohio-6525 at ¶ 42. In addition, we have held that no hearing is required on a post-sentence motion to withdraw a plea where the motion is supported only by the movant's own self-serving affidavit, at least when the claim is not supported by the record. State v. Anderson (Nov. 20, 1998), Montgomery App. No. 17040; Tate v. Hansbro (Dec. 29, 2000), Clark App. No. 2000-CA-27.
 {¶ 7} In the present case, Stewart first claims his attorney misinformed him that he would be sentenced to concurrent terms of six to twenty-five years in prison but would be released on parole after serving just four years and four months. Although he did receive concurrent sentences of six to twenty-five years, Stewart was not released after serving four years and four months. As a result, he argues that a manifest injustice exists.
 {¶ 8} In response, the State claims the record contradicts Stewart's allegation of an assurance that he would be paroled after four years and four months. We disagree. In his signed no-contest petition, Stewart acknowledged that he knew the maximum sentence authorized by law, that no one had promised or suggested he would receive a lighter sentence in exchange for his pleas, that no one had the authority to make any promise or suggestion with regard to his sentence, and that the trial court could impose any lawful sentence.
 {¶ 9} Notably, however, nothing in the no-contest petition or the subsequent change-of-plea transcript controverts Stewart's affidavit in support of his motion to withdraw his pleas, wherein he claims his attorney "explained under the existing law [that he] would be released from prison in four years [and] four months." In short, the record reflects that no one promised Stewart a particular sentence in exchange for his no-contest pleas, but it does not negate his claim that defense counsel said he would be paroled under existing law after serving a little more than four years.
 {¶ 10} Even though Stewart's claim is not specifically controverted by the record, the trial court nevertheless did not abuse its discretion in rejecting his argument without conducting a hearing. When reviewing a post-sentence motion to withdraw a plea, a trial court may assess the credibility of a movant's assertions, Smith, supra, at 264; and an evidentiary hearing is not always required in order to do so. State v.Boyd, Montgomery App. No. 18873, 2002-Ohio-1189. "[A]n undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." Smith, supra, at 264.
 {¶ 11} In this case, the trial court sentenced Stewart in May, 1990, giving him more than five months of jail-time credit. According to Stewart's understanding, then, he should have been paroled sometime around April 1994. Despite his attorney's alleged assurance of parole, Stewart served much more than four years and four months without ever bringing the issue to the trial court's attention. He remained oddly silent on this issue even though he wrote personal letters to the trial court and filed various motions after the spring of 1994. In fact, the record is devoid of any mention of the issue until December 12, 2002, when he filed his motion to withdraw his no-contest pleas. Given that Stewart remained silent for more than eight years after the date his attorney allegedly told him that he would be paroled, it was within the trial court's broad discretion to conclude that his claim was devoid of credibility.[1]
 {¶ 12} In a second argument, Stewart contends his attorney induced him to enter no-contest pleas by misinforming him that he could pick any one of the three charges against him to be dismissed in exchange for pleas of no contest to the other two. According to Stewart's affidavit in support of his motion to withdraw his pleas, the State subsequently refused to dismiss the rape charge and required him to select one of the other two charges for dismissal. As a result, Stewart insists that he should have been allowed to withdraw his no-contest pleas.
 {¶ 13} We find the foregoing argument to be without merit. Even assuming, arguendo, that defense counsel initially misinformed Stewart about being able to have the rape charge dismissed, the record demonstrates that the misstatement did not induce him to enter his no-contest pleas. Indeed, Stewart's signed no-contest petition expressly stated that he would plead no contest to the charges of aggravated burglary and rape in exchange for dismissal of the felonious sexual penetration charge. Stewart submitted this petition to the trial court and admitted during the change-of-plea hearing that it represented his agreement with the State. Thus, the record belies Stewart's claim that he entered the no-contest pleas based on his attorney's mistaken assertion that the rape charge would be dismissed. As a result, the trial court did not abuse its discretion in finding no manifest injustice to be corrected.
 {¶ 14} In a final argument, Stewart claims exculpatory evidence was withheld from him prior to the entry of his no-contest pleas and that he would have gone to trial if he had known about the evidence. The evidence in question consists largely of forensic evidence testing reports prepared by the Miami Valley Regional Crime Laboratory. Stewart contends that he did not discover this evidence until November 10, 1999. Although we cannot say so with certainty, the record suggests that Stewart's original attorney shared this evidence with him prior to the entry of his no-contest pleas. (Affidavit attached to Doc. #14 at ¶ 3; see also Doc. #33 at March 22, 1990, transcript pg. 10-12). In any event, even if Stewart's assertion that he never saw this evidence is true, we note that the evidence is largely inculpatory. The forensic evaluations revealed the presence of blood, head/pubic hair, and semen consistent with Stewart's own blood, head/pubic hair, and semen on articles of clothing and bedding recovered from the bedroom where the rape occurred. Stewart notes, however, that the forensic analysis also revealed the presence of head and pubic hairs not belonging to him or to the victim. In addition, he notes the absence of his fingerprint on a screwdriver allegedly used to gain entry into the victim's house. While the foregoing evidence certainly would be favorable to the defense, the forensic reports on the whole were more damning than exculpatory; and Stewart's claim that he would not have entered the pleas but for his unawareness of the evidence rings hollow.
 {¶ 15} Stewart also cites as exculpatory evidence a statement from the victim that she saw a silhouette of her attacker. Although the victim did make this statement, there appears to have been no question that she knew Stewart personally and was able to identify him as her attacker. Not long before the entry of Stewart's no-contest pleas, his attorney informed the trial court:
 {¶ 16} "* * * This involves a rape where Mr. Stewart has been identified by the complaining witness who he knows and has known for years. Mr. Stewart was apprehended right out front of the house and was viewed by the neighbor, who contacted the police, exiting the house.
 {¶ 17} "Basically, the issue of whether an offense took place and whether he's the individual, I think an objective review of the discovery led to only one conclusion." (Doc. # 33 at March 22, 1990, transcript pg. 15).
 {¶ 18} Having reviewed all of the evidence upon which Stewart relied to support the withdrawal of his pleas, we cannot say the trial court abused its discretion in overruling his motion. Given the largely inculpatory nature of the evidence and the fact that Stewart waited more than three years after admittedly receiving the evidence to file his motion, it was within the trial court's discretion to find no manifest injustice to be corrected. The record simply is devoid of the type of extraordinary circumstances that would necessitate allowing Stewart to withdraw his no-contest pleas well over a decade after sentencing. His assignment of error is overruled.
 III. {¶ 19} Having overruled Stewart's sole assignment of error, we affirm the judgment of the Greene County Court of Common Pleas.
Grady, J., and Young, J., concur.
[1] We note too that Stewart was paroled from prison on January 2, 2003, shortly after filing his Crim.R. 32.1 motion. (Doc. #186). In our view, this fact would militate against allowing Stewart to withdraw his pleas at this late date even if defense counsel did assure him of being paroled after four years and four months. In light of Stewart's release on parole, there is little manifest injustice that a ruling in his favor now could correct.