[Cite as *State v. Sheppard*, 2025-Ohio-4882.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-50 |
| Appellee | : | |
| | : | Trial Court Case No. 2018 CR 0984 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| WINSTON W. SHEPPARD | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 24, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

EPLEY, P.J., and HANSEMAN, J., concur.

JACOB S. SEIDL, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

HUFFMAN, J.

**{¶ 1}** Winston Sheppard appeals from the denial of a motion and amended motion to withdraw his 2020 guilty pleas to two counts of murder and two counts of felonious assault. For the reasons that follow, the judgment of the trial court is affirmed.

**Facts and Procedural History**

**{¶ 2}** On December 14, 2018, Sheppard was indicted on two counts of murder (Counts 1 and 3) and two counts of felonious assault (Counts 2 and 4) in connection with the double-homicide of his mother and sister. Sheppard's mother was the victim of Counts 1 and 2, and Sheppard's sister was the victim of Counts 3 and 4.

**{¶ 3}** Sheppard pled not guilty, and following his arraignment, in January 2019, he filed a motion to determine competency to stand trial and sanity at the time of the offense, which the court granted. On March 29, 2019, after receiving a report from the Forensic Psychiatry Center for Western Ohio and after a hearing, the court issued an entry finding Sheppard competent to stand trial.

**{¶ 4}** On May 9, 2019, Sheppard filed a motion requesting a second opinion on the issues of competency to stand trial and sanity. The court granted the motion the next day. Several days later, the court issued an order for an in-patient examination for competency only, ordering Sheppard to be admitted for a 20-day inpatient examination and evaluation. The court ordered that if Sheppard was found competent to stand trial, a sanity evaluation

was to be completed.[1] On September 27, 2019, after a hearing, the court issued a judgment entry finding Sheppard competent to stand trial.

{¶ 5} On February 28, 2020, Sheppard entered his guilty pleas, and disposition occurred the same day. A plea agreement report was filed in which the parties stipulated that for the purposes of sentencing, "Count[s] 1, 2, 3 and 4 [were] not allied offenses." The State and Sheppard stipulated to a prison term of 15 years to life on each count of murder, to run concurrently with each other, and to a term of 5 years on each count of felonious assault, to run concurrently with each other but consecutively to the terms for murder, for an aggregate prison term of 20 years to life. Sheppard did not file a direct appeal.

{¶ 6} On April 8, 2022, Sheppard filed a notice of appeal and a motion for leave to file a delayed appeal. This court overruled the motion and dismissed the appeal a month later. Sheppard filed a pro so motion for reconsideration, and this court overruled the motion on June 6, 2022.

{¶ 7} On August 2, 2023, Sheppard, acting pro se, filed with the trial court a motion to correct an "invalid sentence." He argued that his murder and felonious assault offenses as to each victim were subject to merger as allied offenses of similar import and that he received ineffective assistance of counsel by counsel's stipulation regarding the merger of those offenses. After receiving the State's response and Sheppard's reply, the court construed Sheppard's motion as an untimely petition for post-conviction relief and found that it lacked jurisdiction to consider it.

{¶ 8} On April 17, 2024, Sheppard filed with the trial court a pro se motion to withdraw his guilty pleas. He attached multiple documents and requested a hearing. Sheppard asserted that he was coerced by defense counsel and the prosecutor to agree that R.C.

---

[1] Two amended orders were subsequently issued.

2941.25, the allied offense statute, did not apply to his offenses. Sheppard further argued that Counts 1 and 2 were allied offenses, that Counts 3 and 4 were allied offenses, and that his pleas were not knowing, intelligent, and voluntary. He asserted that his pleadings to determine competency to stand trial and sanity at the time of the offenses, as well as the court's entry finding him competent to stand trial only, had to be construed as pleas of not guilty by reason of insanity. Along with Sheppard's original motion, he also filed an amended motion to withdraw his guilty pleas, claiming that he received ineffective assistance of counsel when counsel allowed him to agree to an unlawful sentence. Sheppard sought trial on all counts in the indictment. The court overruled Sheppard's motion and amended motion, and Sheppard appealed.

## Assignments of Error and Analysis

{¶ 9} Sheppard asserts five assignments of error, which he claims establish manifest injustice. We consider them together for ease of analysis. Sheppard claims that the trial court erred in accepting his guilty pleas without first obtaining the court-ordered sanity evaluation. He asserts that his pleas were not knowing, intelligent, and voluntary without knowledge of a potentially complete defense, not guilty by reason of insanity. Sheppard argues that his motion for a sanity evaluation and the court's order for one triggered an obligation for the court to resolve the issue prior to accepting his pleas.

{¶ 10} Sheppard asserts that he received ineffective assistance of counsel when defense counsel advised him to enter into the stipulation regarding merger, "coerced" his guilty pleas, and abandoned the not guilty by reason of insanity defense. He claims that defense counsel and the prosecutor threatened consecutive life sentences if he did not accept the plea agreement.

4

**{¶ 11}** Sheppard further argues that the imposition of multiple punishments violated R.C. 2941.25. He asserts that the court was required to make an independent determination regarding merger but instead enforced a stipulation that was contrary to law. According to Sheppard, he was entitled to an evidentiary hearing, and the lapse of four years between sentencing and the filing of his motions to withdraw his pleas was not dispositive of his motions.

**{¶ 12}** Finally, Sheppard asserts that the cumulative effect of the errors in his case rises to the level of manifest injustice. Before addressing his arguments, we review the transcript of the plea and disposition hearing, as well as the trial court's decision.

**{¶ 13}** At the start of the plea hearing, the court encouraged Sheppard to speak to defense counsel at any time if he did not understand the proceedings. Sheppard stated that he was not taking any medication that impaired his ability to think and reason clearly, and he was not under the influence of alcohol or illegal drugs.

**{¶ 14}** Sheppard advised the court that he discussed the case, the nature of the charges against him, and any possible defenses with defense counsel. Sheppard indicated that defense counsel answered all his questions, and he was satisfied with counsel's representation and legal advice. Sheppard stated that he understood his right to go to trial, and he did not feel rushed to change his pleas or that he had no choice but to do so. When asked if he felt "pressured, coerced, compelled, manipulated or frightened in any way in coming to this decision" to change his pleas, Sheppard responded, "No, sir." He further acknowledged that his decision was his alone, a choice from more than one option, voluntary, and without improper influence or duress from any person or source. Sheppard told the court that he understood that a plea of guilty is a complete admission of guilt.

{¶ 15} The trial court conducted a complete Crim.R. 11 colloquy, and Sheppard acknowledged his understanding of the constitutional rights he waived by pleading guilty. He identified his signature on the plea form, and he advised the court that he went over the document with defense counsel and understood it. The court stated that "the parties agree for purposes of the plea that Count 1 and 2 are not allied, and 3 and 4 are not allied," and defense counsel and the prosecutor agreed. The court advised Sheppard that he faced a maximum aggregate prison term of 46 years to life, with 15 years being mandatory, and that he could be subject to a fine of $70,000. Sheppard acknowledged his understanding of the court's advisements.

{¶ 16} In denying Sheppard's motions, the trial court found no merit to his argument that his repeated requests for competency and sanity evaluations, along with the court's finding only that he was competent to stand trial, were the equivalent of a not guilty by reason of insanity plea. The court noted that Crim.R. 11(A) specifically requires such a plea to be in writing. It was further significant to the court that Sheppard's motion and amended motion to withdraw his guilty pleas were filed over four years after he was sentenced in 2020. The court construed Sheppard's motions as a post-sentence motion to withdraw his guilty pleas.

{¶ 17} The trial court noted that the transcript of the plea hearing reflected that Sheppard had testified that no one caused him to feel rushed in coming to his decision to plead guilty, no one had given him the impression that he had no choice but to plead guilty, and no one had caused him to feel pressured, coerced, compelled, manipulated, or frightened into pleading guilty. The court further noted that Sheppard had testified that he had signed the plea form, reviewed it with defense counsel, and understood it, and that the court had discussed the parties' agreement, which was that for purposes of the plea, Counts 1, 2, 3, and 4 were not allied offenses. The court indicated that the plea agreement had been

6

read into the record at the plea hearing and that the court had told Sheppard that he would serve an additional 5 years consecutive to the sentence for murder of 15 years to life. The court found that Sheppard had testified that he still wished to plead guilty, knowing the court intended to impose the agreed-upon sentence of 20 years to life. The trial court concluded that Sheppard's motion to vacate his plea was based a change of heart following the entry of his pleas.

{¶ 18} A motion to withdraw a plea is addressed to the trial court's sound discretion, "which also involves issues of 'the good faith, credibility and weight of the movant's assertions in support of the motion.'" *State v. Wroten*, 2023-Ohio-966, ¶ 15 (2d Dist.), quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). "Under Crim.R. 32.1, a trial court may permit a defendant to withdraw a plea after the imposition of sentence only to correct a manifest injustice." *State v. Ray*, 2020-Ohio-4769, ¶ 11 (2d Dist.). "'A "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.'" *State v. Brooks*, 2010-Ohio-1682, ¶ 8 (2d Dist.), quoting *State v. Hartzell*, 1999 WL 957746, *2 (2d Dist. Aug. 20, 1999).

{¶ 19} "The burden to prove the existence of a manifest injustice in a post-sentence motion to withdraw a plea rests upon the defendant." *State v. Gilbreath*, 2022-Ohio-3759, ¶ 9 (2d Dist.), citing *Smith*, paragraph one of the syllabus, and *State v. Turner*, 2007-Ohio-1346, ¶ 20 (2d Dist.). Importantly, the defendant "'must establish a reasonable likelihood that withdrawal of his plea is necessary to correct a manifest injustice before a trial court must hold a hearing on his motion.'" *Ray* at ¶ 14, quoting *State v. Stewart*, 2004-Ohio-3574, ¶ 6 (2d Dist.).

{¶ 20} "We have also consistently said that 'a "change of heart" is an insufficient justification for the withdrawal of a plea.'" *Wroten* at ¶ 21, quoting *State v. Warrix*, 2015-Ohio-5390, ¶ 30 (2d Dist.). "Likewise, 'a mistaken belief about the plea is not a reasonable basis' for allowing withdrawal." *Id.*, quoting *State v. Dorsey*, 2021-Ohio-226, ¶ 20 (2d Dist.). "Undue delay in filing a Crim.R. 32.1 motion 'is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" *State v. Kemp*, 2014-Ohio-4607, ¶ 8 (2d Dist.), quoting *Smith* at 264.

{¶ 21} "Appellate courts review a trial court's ruling on a motion to withdraw a guilty plea for abuse of discretion." *Gilbreath* at ¶ 8. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34.

{¶ 22} Apart from the issue of Sheppard's requested withdrawal of his pleas, the doctrine of res judicata is dispositive of Sheppard's appeal. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. The doctrine of res judicata "serves to preclude a defendant who has had his day in court from seeking a second on that same issue." *State v. Saxon*, 2006-Ohio-1245, ¶ 18. "In doing so, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Id*. Further, the Supreme Court of Ohio has noted that "[r]es judicata generally bars a defendant from raising claims in a Crim.R. 32.1 postsentencing

motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *State v. Straley*, 2019-Ohio-5206, ¶ 23, citing *State v. Ketterer*, 2010-Ohio-3831, ¶ 59.

{¶ 23} Sheppard did not file a direct appeal, and although not addressed by the trial court, res judicata bars the claims of his motion and amended motion to withdraw his guilty pleas. This includes Sheppard's argument that his pleas were not knowingly, intelligently, and voluntarily entered based on the premise that the trial court's failure to procure a court-ordered sanity evaluation deprived him knowledge of the potential defense of not guilty by reason of insanity. Moreover, as the trial court noted, Crim.R. 11 states: "A plea of not guilty by reason of insanity shall be made in writing by either the defendant or the defendant's attorney." Although he requested a sanity evaluation, Sheppard never entered a plea of not guilty by reason of insanity.

{¶ 24} Sheppard's claims of ineffective assistance based on the alleged failure to pursue the defense of not guilty by reason of insanity, entry into the stipulation regarding merger, and alleged coercion of his guilty pleas are also barred by res judicata. Even if they were not barred, Sheppard cannot establish ineffective assistance. Such a claim requires showing that trial counsel rendered deficient performance and that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668 (1984). By means of the stipulation, the possibility of a 46-year to life sentence was eliminated. Sheppard's ineffective assistance claims are also belied by the transcript of the plea hearing, where he stated that he discussed all possible defenses with counsel and was satisfied with his representation and advice. Sheppard's delay in filing his motions further impugns his credibility. He also raised ineffective assistance in his untimely petition for post-conviction relief. There is nothing in the record beyond speculation, or a mistaken belief, to suggest that a plea of not guilty by reason of insanity would have been successful. As the trial court

9

determined, Sheppard had a change of heart. His claims that the trial court abused its discretion in denying his motion to withdraw his pleas without a hearing in the face of a purported manifest injustice are without merit.

{¶ 25} As the State asserts, Sheppard also waived any argument regarding the merger of Counts 1 and 2 and Counts 3 and 4. "R.C. 2941.25 codifies the double jeopardy protection against multiple punishments for the same offense." *State v. Cruz*, 2025-Ohio-379, ¶ 28 (7th Dist.). R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 26} Waiver is "the voluntary relinquishment of a known right." *Cruz*, at ¶ 33, citing *Gembarski v. PartsSource Inc.,* 2029-Ohio-3231, ¶ 24. A defendant can "'expressly waive the protection afforded by R.C. 2941.25'" by means of a stipulation in a plea agreement. *State v. Thomas*, 2016-Ohio-5057, ¶ 11 (2d Dist.), quoting *State v. Rogers,* 2015-Ohio-2459, ¶ 20. "In interpreting the aforementioned language from *Rogers*, the Eighth Appellate District recently held that 'the Ohio Supreme Court observed that such a stipulation is simply one means by which a defendant may "waive the protection afforded by R.C. 2941.25[.]"'"

(Bracketed text in original.) *Id.*, quoting *State v. Black*, 2016-Ohio-383, ¶ 16 (8th Dist.). "In so holding, the Eighth District concluded that a plea agreement need not specifically stipulate to there being a separate animus in order to effectively waive the allied offense issue." *Id.*, citing *Black* at ¶ 16-18.

{¶ 27} "'[The Ohio Supreme Court] does not require the trial court to determine whether the offenses actually merge before accepting the plea when the parties have specifically entered into an agreement that they do not merge. It is when the parties failed to discuss the merger that the trial court is obligated to determine if the offenses are allied offenses.'" (Bracketed text in original.) *State v. Dickenson*, 2024-Ohio-1487, ¶ 18 (5th Dist.), quoting *State v. Haser*, 2021-Ohio-460, ¶ 28 (5th Dist.).

{¶ 28} Here, the record reflects that the parties discussed merger, and contrary to Sheppard's assertion, the trial court was under no obligation to conduct an independent analysis of the issue beyond the plea agreement. There is no evidence in the record to support Sheppard's claim of a manifest injustice requiring the withdrawal of his guilty plea. More importantly, as with Sheppard's other claims, this claim is barred under the doctrine of res judicata.

{¶ 29} Finding no merit to any of Sheppard's assigned errors, they are overruled.

## Conclusion

{¶ 30} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HANSEMAN, J., concur.